Gary G. Goyette, SBN 224715
GOYETTE & ASSOCIATES, INC.
A Professional Law corporation
2366 Gold Meadow Way, Suite 200
Gold River, CA  95670
Telephone: (916) 851-1900
Email:  goyetteg@goyette-assoc.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAREEFAH JOSEPH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WEST (SEIU UHW), and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**:<br><br>1) EMPLOYMENT REINSTATEMENT COMPENSATORY DAMAGES, INTEREST, ATTORNEYS FEES AND COSTS UNDER THE FMLA (29 U.S.C. § 2601 et. seq.)<br>2) DISCRIMINATION AND HARASSMENT BASED ON RACE (CA Gov. Code § 12940(a) & (j))<br>3) FAILURE TO PREVENT DISCRIMINATION OR HARASSMENT BASED ON RACE (CA Gov. Code § 12940(k))<br>4) UNPAID OVERTIME (29 U.S.C. §§207)<br>5) WAGE –RELATED DISCRIMINATION (29 U.S.C. §215(a)(3))<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

## I.   INTRODUCTION

1.     This is an action by an individual, Shareefah Joseph, against SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WEST (SEIU UHW), based on a variety of statutory violations by SEIU UHW which adversely affected Ms. Joseph. The varied violations against Ms. Joseph include: a) SEIU UHW misclassifying Ms. Joseph as a salaried, exempt employee and making her routinely work in excess of forty hours per week without providing any overtime pay; b) subjecting Ms. Joseph to wage-related retaliation; c) subjecting Ms. Joseph to continued discrimination and harassment based on her African American race, without taking any steps to abate the discrimination and harassment; and d) terminating Ms. Joseph while she was out on medical leave, in violation of the Family Medical Leave Act. As pled with specificity below, each of these violations are clear, and caused monetary damages to Ms. Joseph, which are now sought from SEIU UHW through this action.

## II.   PARTIES

2.     The individual named as Plaintiff Shareefah Joseph (hereafter "Plaintiff"), at all times pertinent to this action was employed by Defendant SEIUUHW as an "Organizer Representative" since April 1, 2008. All but three months of her work (when she was assigned to the Nursing Home Division in early 2009) has been in the SEIU UHW Home Care Division as an Organizer Representative, primarily based out of Oakland, and assigned to the Sonoma County region and working out of the SEIU UHW Santa Rosa office at 1717 Corby Ave in Santa Rosa.

3.     Defendant Service Employees International Union - United Healthcare Workers West (hereafter "SEIU UHW") is, and at all times mentioned herein, was an unincorporated voluntary association, with its main office located at 560 Thomas L Berkley Way Oakland, CA 94612-1602. For the purposes of this action and as a Defendant to this action, the SEIU-UHW includes its President, Dave Regan, and all agents, employees, attorneys, accountants, investigators, officers, directors, representatives, and anyone else acting on behalf of the SEIU-UHW.

4.    At all times herein mentioned each of DOES 1 through 10, inclusive, was the agent, servant, and employee of each of the remaining co-defendants, and in doing the things herein alleged was acting in the scope of his or her authority as such agent, servant, and employment, and with the permission and consent of each co-defendant.

5.    The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 10, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names, and Plaintiff will amend this Complaint to show their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the Defendants, DOES 1 through 10, inclusive, are responsible in negligence, warranty, strictly, or otherwise, for the events and happenings herein referred to and proximately thereby caused and continue to cause the violation of the rights of the Plaintiff as herein alleged.

### III.    JURISDICTION

6.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 5 as though fully set forth herein.

7.    Plaintiff in this action brings causes of action for violations of the various federal statutes, including the Family Medical Leave Act (29 U.S.C. § 2601 et. seq.) and the Fair Labor Standards Act (29 U.S.C. §§ 201 et seq.) for employment reinstatement, overtime pay, liquidated damages, interest, attorneys fees and costs pursuant to 29 U.S.C. §§ 216, and for damages associated with intentional conduct pursuant to 29 U.S.C. § 255. Since these causes of action are based on federal statutes, jurisdiction in the Northern District Federal Court is proper pursuant to 28 U.S.C. § 1331.

### IV.    VENUE

8.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 7 as though fully set forth herein.

9.    Venue for this action in the Northern District of California Federal Court in San Francisco is proper pursuant to 28 U.S.C. §1391(b) since Defendant resides within the County of Alameda and since the majority of events if not all events giving rise to

the claims in this complaint occurred within the Northern District Court's San Francisco judicial District.

## V.    FACTUAL ALLEGATIONS

10.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 9 as though fully set forth herein.

11.    At all times pertinent to this action, including the period commencing three years prior to the filing of this action, beginning on March 31, 2013, Plaintiff worked as a union Organizer Representative for Defendant SEIU-UHW.

12.    Plaintiff began working as a union Organizer Representative for SEIU UHW in 2009, and worked primarily in Sonoma and Alameda Counties, as well as in Contra Costa County and other locations in California.

13.    As misclassified, salaried, exempt Organizer Representative, Plaintiff was required to work a minimum of fifty hours per week, and roughly half of each calendar year worked fifty-five to sixty hours per week.

14.    Ms. Joseph's annual salary paid by SEIU at the time she was terminated by SEIU UHW on August 27, 2015 was $ 89,035.70.

15.    While Plaintiff was still out on approved, unpaid leave under the Family Medical Leave Act ("FMLA"), SEIU UHW terminated Plaintiff on August 27, 2015 based on the incorrect conclusion that Plaintiff's available FMLA leave was exhausted.

16.    In turn, as pled in more detail below, SEIU UHW based the termination of Plaintiff on a change in their manner of tracking the twelve months for FMLA leave as applied to their employees, for which they failed to provide the notice to Plaintiff required under the FMLA, and which contradicted a separate notice from SEIU to Plaintiff regarding her available FMLA leave for 2015.

17.    The facts associated with and specific to the causes of action in this complaint are pled below under the respective causes of action.

/ / /

/ / /

## VI.   FIRST CAUSE OF ACTION
### EMPLOYMENT REINSTATEMENT, COMPENSATORY DAMAGES, INTEREST, ATTORNEYS FEES AND COSTS UNDER THE FMLA
#### (29 U.S.C. § 2601 et. seq.)

18.   Plaintiff incorporates by reference and re-alleges paragraphs 1 through 17 as though fully set forth herein.

19.   The Family Medical Leave Act ("FMLA") set forth at 29 U.S.C. § 2601 et. seq. requires employers to provide qualified employees with up to twelve weeks of unpaid leave per year for qualified personal reasons.

20.   Plaintiff was qualified to take FMLA in 2015 since she had worked for SEIU UHW since 2009, and since she had worked at least 1,250 hours over the 12 months preceding her FMLA leave taken in 2015.

21.   Plaintiff properly notified SEIU UHW, as supported by her doctor, that she needed to be out on FMLA leave through October 1, 2015.

22.   Despite Plaintiff having available FMLA leave through October 1, 2015 - - or alternatively through, at an absolute minimum, September 21, 2015 - - SEIU UHW terminated Plaintiff on August 27, 2015, incorrectly claiming that Plaintiff's FMLA leave was exhausted on August 20, 2015, and that with vacation days considered, Plaintiff was required to return to work after August 26, 2015.

23.   SEIU UHW erroneously concluded that Plaintiff's FMLA leave was exhausted and that she was required to return to work on August 27, 2015 based on SEIU UHW changing the 12 month FMLA leave tracking period for their employees, including Plaintiff, from a calendar year 12 month period to a 12 month period measured forward from when the employee first takes FMLA leave.

24.   As set forth at 29 CFR section 825.200(d)(1), any time an employer changes the 12 month tracking period used for FMLA leave for employees, the employer must provide written notice directly to the employees at least sixty (60) days prior to the effective date of the new 12 month FMLA period, also 29 CFR section

825.200(d)(1) specifically requires notification "to all employees" (as opposed to the union being responsible for notification to union employees).

25.    SEIU UHW did not comply with this notice requirement, since SEIU UHW emailed Plaintiff regarding the proposed change to the 12 month FMLA tracking period on October 24, 2014, with an intended effective date for the proposed 12 month tracking period of December 1, 2014 - - only 37 days after the notice.

26.    SEIU UHW later denied Plaintiff's grievance appealing her termination based solely on its belief that the Plaintiff's FMLA leave was exhausted and that she was required to return to work on August 27, 2015, but failed to return. Further still, 29 CFR section 825.200(d)(1) clearly states that "Under no circumstances may a new method be implemented in order to avoid the Act's leave requirements."

27.    Since SEIU UHW did not comply with the required 60 day notice, the proposed new 12 month FMLA tracking period (measuring the 12 months forward from the employee's last leave) is void, and cannot be considered adopted by SEIU.

28.    Under the 12 month calendar year FMLA tracking period, Plaintiff used five days of FMLA leave used from 1/5/15 to 1/9/15, and therefore had 55 days (or 11 weeks) of leave remaining *when* she began her next FMLA leave on July 9, 2015, resulting in  - -meaning the soonest her 12 weeks of leave for calendar 2015 could have been exhausted was September 21, 2015, making SEIU UHW's termination of Plaintiff on August 27, 2015 a clear violation of the FMLA.

29.    Alternatively, the new 12 month FMLA tracking period proposed by SEIU UHW is void based on the specific notice provided by SEIU UHW itself to Plaintiff; on Nov. 3, 2014, SEIU UHW Human Resources Assistant Sophi Hak sent Plaintiff an email notifying her that her 'rolling calendar year' for FMLA was 6/4/14 to 6/4/15, and stating that her leave would be exhausted on January 6, 2015.  Based on this notice, the *next* FMLA leave taken by Plaintiff (after working at least 1,250 hours) starting July 9, 2015, with 12 new weeks of FMLA leave available, would run her through October 1,

2015 - - again making SEIU UHW's termination of Plaintiff on August 27, 2015 a clear violation of the FMLA.

30.   In denying Plaintiff's grievance appealing her termination, SEIU UHW also argued that, separate and apart from how much FMLA leave was available as of August 27, 2015, Plaintiff was ordered to return to work and had not obtained permission to remain on leave beyond August 26, 2015. This argument ignores the controlling law, which unequivocally states that "It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by the FMLA." (See DOL Fact Sheet # 28E). Therefore if FMLA leave remains available to an employee using the correct calculation and correct 12 month period, and the employee has provided the required doctor's opinion stating when the employee is fit to return to work (which Plaintiff did), then the employer cannot use their own policies to deny FMLA leave to the employee, contrary to the doctor's orders regarding what is best for the health of the employee.

31.   As a direct result of being terminated by SEIU UHW while on leave in violation of the FMLA, Plaintiff has lost all wages since August 27, 2015.

32.   As a direct result of being terminated by SEIU UHW while on leave in violation of the FMLA, Plaintiff has endured significant pain and suffering, and continues to endure significant pain and suffering, for which monetary damages should be awarded.

## VII.   SECOND CAUSE OF ACTION
### DISCRIMINATION AND HARASSMENT BASED ON RACE
### UNDER THE CA FEHA
### (CA Gov. Code § 12940(a) &(j))

33.   Plaintiff incorporates by reference and re-alleges paragraphs 1 through 32 as though fully set forth herein.

34.   The California Fair Employment and Housing Act ("FEHA") prohibits employers from discriminating against employees in terms, conditions, or privileges of employment or harassing employees based on the race of the employee.

35.   SEIU UHW, and Plaintiff's supervisors and co-workers SEIU UHW is responsible for, have discriminated against Plaintiff and harassed Plaintiff based on her African American race, for almost four years, creating intolerable work conditions which ultimately caused Plaintiff to take successive periods of FMLA leave from work based on her doctor's order.

36.   The ongoing racial discrimination and harassment became intolerable, not only due to the clear  disfavor with which SEIU UHW treated Plaintiff, compared to her co-workers, but because SEIU UHW ignored her complaint and allowed the racial discrimination to continue unabated.

37.   The racial discrimination and harassment began in late 2011, following Plaintiff's request for payment of her accrued vacation balance remaining after three years. As *the only* African-American employee working out of the SEIU UHW Santa Rosa office, Plaintiff, in early December 2011, was at the main SEIU UHW office in Oakland speaking with Jennifer Castro, the executive assistant to Home Care ("HC") Director Rebecca Malberg, when SEIU UHW President Dave Regan stopped by and asked Plaintiff "Did you buy your hair from the store on the corner?" and then reiterated "I said did you buy your hair[1] from the store on the corner?" Both Ms. Castro and Mylka Rodriguez, the Home Care coordinator, witnessed the racially offensive statements by Mr. Regan to Plaintiff.

38.   The following week Plaintiff was again at the SEIU UHW Oakland office, on the second floor at the copier, when Lily Hickman (HC Coordinator) stated to her "Is that your real hair?" Lily Hickman worked directly with Mylka Rodriguez; Ms. Rodriguez likely shared the statement Dave Regan made with Ms. Hickman, which prompted her to ask Plaintiff "is that your real hair?"  Regardless of cause for Ms. Hickman's question, it was clear that the racial comments/perception against Plaintiff

---

[1]  Plaintiff's hair style worn that day was a 'weave'; a version of hair extensions almost always (if not exclusively) associated with African Americans.

had begun to permeate the SEIU office.  Adverse acts against Plaintiff then began to occur.

39.    At the beginning of 2012 SEIU management sent two new representatives (Marie Gil and Faby Molina) to work in Plaintiff's area.  Then on February 9, 2012, SEIU shipped Plaintiff to work on the Seton campaign in Daly City; three weeks later Rebecca Malberg [ located in Oakland - - the Division Director ]  contacted Plaintiff and told her she was being removed from that campaign, but refused to give any reasons for the removal. The following Monday Plaintiff returned to Sonoma (her designated work area) and was told that she could no longer work her regular area because she did not speak Spanish; she was given this directive despite the fact that she had been the top producer in her Division the previous two years. Mylka Rodriguez divided her normal area among the two Spanish speaking representatives (Marie Gil & Faby Molina) and left Plaintiff assigned to work areas 45-60 minutes away from the Sonoma office.

40.    On February 29, 2012 several serious complaints were reported about the two new SEIU representatives in Sonoma, yet neither was ever disciplined.  In the first week of March, 2012 Mykla Rodriguez (Plaintiff's direct supervisor as of 2012) instructed Plaintiff to document complaints being made on the two new representatives, even though Plaintiff did not supervise either of these SEIU employees; Ms. Rodriguez then informed the two new representatives that Plaintiff documented and reported the complaints to her, without telling these representatives that she (Ms. Rodriguez) had instructed Plaintiff to do so.  This set of aggravated confrontational actions towards Plaintiff served to create an extreme hostile work environment against Plaintiff.

41.    On March 13, 2012 Mylka Rodriguez allowed Marie Gil (who was trained by Ms. Rodriguez) to remove Plaintiff's desk chair; when Plaintiff asked Ms. Gil to return the chair, Ms. Gil refused and yelled at Plaintiff.  Plaintiff immediately reported the incident to Mylka Rodriguez, who said she would speak to Ms. Gil about it. The next day (March 14th), Mylka Rodriguez allowed Ms. Gil to report false recruitment numbers for Plaintiff which made it look like she had low productivity in comparison to

Ms. Gil and Ms. Molina in Sonoma. Plaintiff, as the target of this retaliation was, again, the only African American employee in the Santa Rosa office.

42.     Then, through Ms. Rodriguez, the discrimination soon worsened. On March 21, 2012 SEIU management required Plaintiff to attend/sit through a three-hour plus interrogation style meeting in the Santa Rosa office with Ben Tracey and Mykla Rodriguez, at which she was told their focus is staff development for the two new representatives, regardless of whether that development had a negative effect on her job productivity/area. The next day on March 22, 2012, Mykla Rodriguez shared confidential information with Ms. Gil about Plaintiff being removed from the Seton campaign and allowed Ms. Gil to ridicule Plaintiff by going out of her way to compliment virtually all the other employees in the organization on the Seton campaign except Plaintiff. Then the next day Ms. Rodriguez instructed Ms. Gil not to attend her own meeting, requiring Plaintiff to do her work.

43.     The discrimination by SEIU supervisors against Plaintiff continued. On April 16, 2012 SEIU management required her to attend an investigatory meeting regarding the Seton campaign, citing the following reasons as the basis for the investigation: a) Lily Hickman accused her of being disruptive; and b) she gave a member a weeble (tiny furry purple ball) without management's approval.  On April 26, 2012 Plaintiff was verbally exonerated of all charges by management; this exoneration, however, was never put in writing, tainting Plaintiff's HR profile.

44.     While Plaintiff continued to competently perform her work duties, the manner in which SEIU was 'targeting' her without any basis for doing so continued. In late August,2012, she was ordered by Rebecca Malberg to a meeting in Oakland based on an allegation by Marie Gil that she (Plaintiff) had knowledge of an incident at an E-board meeting in San Luis Obispo - - even though this was a meeting Ms. Malberg had instructed Plaintiff not to attend. Despite this fact, Plaintiff was put on administrative leave.  On September 5, 2012 Plaintiff was told to return to work, but was threatened by Rebecca Malberg that the investigation "is ongoing, but you are 'exonerated for now.'

45.     October 2, 2012. Plaintiff was called in for a meeting in Oakland with Ms. Gil and her District supervisor, Benigno Delgado. This two and a half hour meeting consisted mostly of Ms. Gil declaring to Mr. Delgado that she (Ms. Gil) 'has an issue' with Plaintiff, and that she didn't know if the issue could be resolved - - yet she spoke only in vague generalizations (such as 'I don't feel comfortable around Plaintiff') and did not make any specific allegations against Plaintiff.   At this meeting, Mr. Delgado allowed Ms. Gil to yell at and berate Plaintiff. Forcing Plaintiff to sit through this meeting constituted racial discrimination since as the only African American employee in the Santa Rosa office she was the only person forced to sit through Ms. Gil berating her, without making any actual allegations of misconduct. Even though this meeting interrupted Plaintiff's work, there was never any follow up from management to Plaintiff to explain or attempt to justify the need for the meeting, the lack of allegations, or the manner in which he allowed Ms. Gil to berate her at the meeting.

46.     Then on October 17, 2012 Plaintiff was required to attend a meeting in San Francisco with Benigno Delgado and with SEIU manager Ben Tracey regarding the allegation that she was 'not working well with the team'.  At this meeting Ben Tracey instructed her not to talk about her accomplishments, her good work ethic and her high productivity in the course of her work, because "that's not helpful to the team."  Benigno Delgado's added instructions were for her to instead 'tell a sad story about her life" so that people would like her, so she would appear more vulnerable and less assertive, and so management would like her. These strange directives given by Mr. Tracey and Mr. Delgado to Plaintiff were entirely contrary to the expectations by SEIU for multiple, non-African American SEIU employees who were very assertive in their work, were never met with or reprimanded by SEIU management, and ultimately were promoted by SEIU (including Hortencia Armendariz who was promoted to the Kaiser Field Director position, Triana Sulton who was promoted to Assistant Chief of Staff position, Lily Hickman who was promoted to the Coordinator position, Ariana Jimenez who was promoted to the Political Director position, Mlyka Rodriguez who was promoted to the

Home Care Field Director position, Myriam Escamilla who was promoted to the Hospital Division Director position, and Rebecca Malberg who was promoted to the Home Care Division Director position.

47.     On October. 30, 2012, after being required to testify at a trial for the organization (regarding the Seton campaign), Plaintiff arrived at her work site and was reprimanded by SEIU supervisor Ariana Jimenez for being 'missing in action', stating 'no one knew where she was', despite the fact that Plaintiff reminded the campaign lead (Paul Calderon) that morning about her testimony, and despite the fact that Rebecca Malberg and the SEIU Chief of Staff knew she was testifying. So even when engaged in required duties for her employment with SEIU, Plaintiff faced erroneous accusations caused by SEIU supervisors not communicating, at best, and lying, at worst.

48.     In order to remain employed by SEIU, Plaintiff was forced to continue to tolerate racial discrimination due to her African American ethnicity, ranging from subtle adverse comments or treatment, to extreme, direct adverse treatment throughout 2013. For example, on December 27, 2013, based on her reimbursement expenses not being processed and paid in a timely manner in accordance to UHW's practiced policies and/or procedure Plaintiff inquired about her expense report to Miranda Cheuk (assigned Admin. Assistant for Plaintiff's region), to Jennifer Castro, to Nora Dolly (who works in Finance) and to Edgar Cajina (the Director of Finance),- - and in response was yelled at by Mr. Cajina. This was followed by retaliation from Mr. Cajina's daughter (an SEIU employee who shared an office with Jennifer Castro) on December 30, 2013, when Ms. Cajina verbally assaulted Plaintiff with a racial slur.

49.     The adverse treatment of Plaintiff by SEIU then continued into 2014. On January 16, 2014 she was required to attend an investigatory meeting and was accused by Jennifer Castro of physically and verbally assaulting her on December 30, 2013.  On information and belief Plaintiff asserts that Rebecca Malberg recommended that Jennifer Castro report Plaintiff to HR after overhearing a conversation between Plaintiff and Ms. Castro regarding Plaintiff's expense inquiry. On January 21, 2014 Plaintiff was

exonerated of all Jennifer Castro's false claims; Ms. Castro received no discipline, however, for lying during the investigation, which normally is considered misconduct which justifies termination by SEIU.

50.    In February of 2014 SEIU management appointed Marie Gil to be Plaintiff's new lead/supervisor, even though Plaintiff was not in her region.  Plaintiff voiced her concerns to management over this placement in a hostile work environment (as summarized above, it was Ms. Gil who stated in October of 2012 that she had 'an issue' with Plaintiff, but refused to state what the issue was,  and simply declared that she didn't know if the "issue" could be resolved). A month later, this assignment proved to contribute to the ongoing retaliation being experienced by Plaintiff.

51.    On March 28, 2014 Ms. Gill sent a false and derogatory report to Ben Tracey, alleging that Plaintiff refused to ride with a UHW member. Mr. Tracey in turn sent Plaintiff an accusatory email saying she was required to have her car running, etc. No investigation was ever done on Ms. Gil's false accusation.

52.    On April 12, 2014, - - consistent with the pattern which began in 2012 - - Plaintiff was required to attend yet another investigatory meeting with Rebecca Malberg, as was reprimanded, triggered by yet another false allegation (Ms. Malberg contended that Plaintiff refused to provide factual information to SEIU management). This time Plaintiff was accompanied by her union representative, Jared Mayhugh.  After Plaintiff was exonerated (again) at the close of the meeting, Mr. Mayhugh reprimanded Rebecca Malberg for putting Plaintiff through another investigation which yet again led to no finding of misconduct. He specifically asked Ms. Malberg "why are you targeting Plaintiff?".  Ms. Malberg refused to answer the question, and no investigation was ever done by SEIU on her adverse treatment towards Plaintiff. Mr. Mayhugh pointed out to Ms. Malberg that her practice of accusing and reprimanding Plaintiff without allowing Plaintiff to address the allegations was poor management.

/ / /

/ / /

53.     Despite this reprimand from Mr. Mayhugh (and perhaps because of it), Plaintiff was required one week later again, on April 21, 2014 (by Ben Tracey) to attend yet another an investigatory meeting - - this time for Plaintiff following SEIU written protocol by submitting her doctor's order on April 3rd to take a single day off. Rebecca Malberg and Ben Tracey were not happy that she took a single day off because the campaign she was assigned to was extended to six days per week, and the day off interfered with that extended schedule. Ms. Malberg and Mr. Tracey did not seem to care that the basis for the doctor's order was Plaintiff's recent surgery, which in the doctor's opinion did not allow her to work six days per week at 10 hour shifts.

54.     Separate from the technicalities of the protocol on submitting doctor's notes for FMLA time off, more relevant to the ongoing retaliation experienced by Plaintiff is the manner in which Ben Tracey began the meeting on April 21st - - specifically with offensive racial epithets criticizing the Ralph Lauren logo patch sweater Plaintiff was wearing that day.  Mr. Tracy, in front of Benigno Delgado and Hector Cardenas, insinuated that Plaintiff could not belong to a polo club or ride horses because she is black, and not a white male.  Mr. Tracey specifically stated "I'd be surprised if you belonged to one of those special clubs" and "I just don't see you belonging to one of those special clubs... I just don't see you playing with old men and balls. "

55.     Then on May 28, 2014 Plaintiff was informed by Benigno Delgado via email that Ben Tracey had made Jennifer Castro her new Administrative Assistant ("AA"), who would now be responsible for processing Plaintiff's expense report.  SEIU management (Mr. Delgado) also informed Plaintiff that all of her other reporting tasks would go through Ms. Castro. Given that Ms. Castro had, at the start of 2014 tried to have Plaintiff terminated by filing a false complaint with SEIU accusing Plaintiff of committing a crime by physically assaulting her on December 30, 2013, and given that all such allegations were found to be without any basis, and Ms. Castro never receiving any discipline for her dishonest allegations, SEIU assigning Jennifer Castro to act as

Plaintiff's AA, such that all of Plaintiff's reporting went through Ms. Castro, constituted ongoing discrimination.

56.     On May 30, 2014 Plaintiff notified SEIU HR Assistant Sophi Hak (since Mary Sacramento was out of the office) of her concerns about being placed in a hostile work environment with Ms. Gil as her lead and Ms.Castro as her AA, and requested specific information regarding Ms. Castro's prior false allegations against Plaintiff. On June 2, 2014 Ms. Hak responded via email and refused to provide any further information, simply stating that no disciplinary action was taken by SEIU against Plaintiff, and that the matter was otherwise confidential.

57.     Through the summer of 2014 the racial discrimination against Plaintiff by Ms. Castro continued, including Ms. Castro falsely accusing Plaintiff of being absent from work, contacting her directly with false allegations of not adhering to imaginary deadlines for submitting paperwork, and contacting her directly to falsely accuse Plaintiff literally every three days of not submitting canvass paperwork that was in her mailbox before the 10:00 am deadline for Plaintiff's region (orientation cards are submitted directly to membership).

58.     More retaliation from Ms. Castro on September 18, 2014, when Ms. Castro emailed Plaintiff to accuse her of improperly going into the Home Care storage unit without Ms. Castro's permission. Ms. Castro's email was fabricated and was without basis since: a) Plaintiff did not enter the supply room; and b) Ms. Castro was not the only person authorized to enter this storage unit as she claimed. Instead the usual procedure was for Dan (printing department) or Nancy Rojas (front desk secretary) to open the supply room. All of the harassing accusations by Ms. Castro were reported by Plaintiff to management, but Ms. Castro's behavior only worsened.

59.     In mid-October, 2014, the discrimination against Plaintiff reached new heights.  While at a retreat for the Home Care Division on October 16, 2014, Jennifer Castro physically assaulted Plaintiff by walking over to Plaintiff and striking Plaintiff on the head with her hand. David Bonner, SEIU Union Representative witnessed the assault,

and Plaintiff immediately reported it to Benigno Delgado, Mylka Rodriguez, and Ben Tracey, (the SEIU management present at the Home Care Division retreat) in Ms. Castro's presence.  After waiting a week with no communication from management in regards to assuring or even discussing Plaintiff's safety or steps to provide reasonable protection in the future from being physically assaulted by Ms. Castro while at work, Plaintiff emailed SEIU HR Director Mary Sacramento the following week, on October 21, 2014, reporting the incident again to be certain SEIU HR knew of this assault. Ms. Sacramento immediately emailed Plaintiff back and demanded "Why did you wait to report it to me today if it happened last Thursday?". Plaintiff responded to state "It was reported to management Thursday at the retreat- no idea why it failed to be reported to you. This e-mail was sent to ensure you have knowledge of the incident." Despite the serious nature of the physical assault incident, and an eye witness admitting to SEIU HR that the incident did in fact occur, Plaintiff had to keep following up with both SEIU HR Director Mary Sacramento and her own supervisor Benigno Delgado to find out if anything would be done - - all the while with Jennifer Castro never being reprimanded or even questioned of the assault and remaining as her AA who she had to submit reports to. Ms. Sacramento finally responded via email to report her conclusion that 'she didn't feel Jennifer Castro meant to cause her harm'. Plaintiff questioned Ms. Sacramento on whether her investigation was done thoroughly, but received no further response. Her own supervisor, Benigno Delgado, first scheduled to meet with her and with Ms. Castro, but then cancelled this meeting and refused to address the matter further since then.

60.     The racial discrimination against Plaintiff then continued into 2015 as follows:

- **March 5th Incident:**
  At an E-Board meeting in Fresno Plaintiff requested that SEIU UHW supervisor Ben Tracey not continue to use racial undertones in his speech towards staff and or union members, since the beginning his speech included his use of racial undertones in regards to black people during a home care division staff meeting. Mr. Tracey tried to defend his statements by denying he used race in his speech, despite his use of the word, "black", and the fact that he did not mention any other races in regards to a union jurisdictional issue (which had nothing to do with race or the plight of black people). Greg Price, Plaintiff's new direct

supervisor, then defended Mr. Tracey by stating "I don't have a problem with it, fuck this PC shit! We need to say whatever we need to say to get the people riled up".

- **March 25th Retaliation Begins:**
  Greg Price then sends e-mail of corrective feedback with false account of the verbal conversation with Plaintiff, and threatens discipline

- **March 27th Retaliation Continues:**
  Greg Price sends reprimanding e-mail that includes false reporting creating the appearance that Plaintiff's productivity is low

- **March 27th Retaliation Continues:**
  SEIU intentionally issued Plaintiff a check (vacation cash out) for the wrong amount, causing Plaintiff to be refused service at Union Bank. Later, SEIU UHW HR refused to issue written statement explaining why they issued a check for the wrong amount to Plaintiff.

- **April 1st Retaliation Continues:**
  SEIU UHW HR issued false statement in regards to Plaintiff's vacation accruals and denied Plaintiff's request to further cash out her vacation pay. SEIU UHW then disabled/blocked Plaintiff from viewing her most recent vacation/sick time accruals

- **April 2nd Retaliation Continues:**
  Mylka Rodriguez falsely reported Plaintiff's productivity at zero to the entire home care division- including Chief of Staff. Edgard Cajina accused Plaintiff of being at fault for SEIU UHW issuing her a check for the wrong amount, then berated and yelled at Plaintiff "The organization owes you nothing so you can go sue the bank if you want to!"

- **May 12th Incident**
  HR sends e-mail to management team including Greg Pullman (Chief of Staff) falsely accusing Plaintiff of not sending a doctor's note that she previously submitted to Greg Price on April 29th, and Greg Pullman forbids Plaintiff from communicating a written defense to the false accusations.

- **May 15th**
  Plaintiff filed a formal complaint with HR in regards to being falsely accused and barred from being allowed to defend herself; SEIU UHW HR never responded to this complaint.

- **May 29th 2 pm**
  Mylka Rodriguez and Greg Price required a meeting with Plaintiff, and issued a statement that the meeting was *not* a disciplinary action, then later issued a disciplinary action into Plaintiff's personal file.

- **May 29th 3:30 pm**
  Greg Price sends e-mail falsely accusing Plaintiff of not reporting her productivity.

- **June 2nd**
  Plaintiff filed a formal complaint with SEIU UHW HR in regards to the ongoing harassment, retaliation and not responding to her previous complaint issued on May 15th - HR never responded to this complaint.

61.     Collectively, the specific racial slurs used and tolerated by SEIU managers, together with the repeated, baseless investigations conducted by SEIU managers against Plaintiff, culminating with the physical assault towards Plaintiff by Jennifer Castro without consequence that was allowed and tolerated by SEIU managers satisfy the elements for racial discrimination/retaliation, as summarized below.

62.     In addition to the race-based discrimination summarized and pled above, Plaintiff continued to experience race-based discrimination through the time SEIU UHW terminated her on August 27, 2015. For almost four years SEIU UHW supervisors and co-workers subjected Plaintiff to racial discrimination, during which time SEIU UHW disregarded Plaintiff's complaints about this discrimination and failed to take appropriate corrective action.

63.     The racial discrimination pled above satisfies the elements for a claims under CA Gov. Code § 12940(a), which are: a) the employee was a member of a protected class; b) the employee was performing competently in the position he or she held; c) the employee suffered an adverse employment action (including disparate treatment); and d) some other circumstance suggests discriminatory motive on the part of the employer. See Guz v. Bechtel National, Inc., 24 Cal.App.4th 317 (2000).

64.      After the discrimination based on race by Plaintiff's SEIU UHW supervisors and co-workers had occurred, was continuing, and was not being corrected by SEIU UHW, Plaintiff filed a race-based discrimination complaint with the California Department of Fair Employment and Housing ("DFEH"), and was provided a 'right to sue' letter from DFEH dated April 1, 2015. A copy of the complaint filed and the right to sue letter is attached hereto as "**Exhibit A**."

65.     Plaintiff was harmed by Defendants' failure to take appropriate corrective action.  Defendants' failure to take appropriate corrective action was a substantial factor in causing Plaintiff's harm.

66.      In committing the wrongful acts, Defendants, and each of them, acted intentionally, oppressively and with malice against Plaintiff.  As a direct and proximate

result of the wrongful acts or omissions of Defendants, Plaintiff has sustained and will sustain general damages for past, present, and future physical, psychological and emotional discomfort, pain and suffering and severe emotional distress, in amounts according to proof at trial.

67.   Pursuant to California Government Code Section 12965, Plaintiff is entitled to an award against Defendants, and each of them, of attorneys' fees and costs incurred in this action.

## VIII.  THIRD CAUSE OF ACTION
## FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT (CA CA Gov. Code § 12940(k)

68.   Plaintiff incorporates by reference and re-alleges paragraphs 1 through 67 as though fully set forth herein.

69.   Based on the detailed pleadings above, SEIU UHW failed to take the necessary corrective steps to eliminate or at least reduce the race-based discrimination and harassment Plaintiff was subjected to by her supervisors, her co-workers, and SEIU UHW management.  Rather than take any corrective steps, SEIU UHW actually ignored each concern raised by Plaintiff, and even singled her out for her complaints, subjecting her to baseless interrogation-type meetings, and threatening her with discipline, as pled above.

70.   SEIU UHW accordingly violated the FEHA statute obligating employers to take steps to prevent discrimination and harassment.

## IX.   FOURTH CAUSE OF ACTION
## OVERTIME PAY
## (Violation of the FLSA, 29 U.S.C. §§ 201 et seq., including § 207)

71.   Plaintiff incorporates by reference and re-alleges paragraphs 1 through 70 as though fully set forth herein.

72.   The Fair Labor Standards Act ("FLSA") set forth at 29 U.S.C. § 201 et. seq. requires employers to provide overtime pay at one and one half times a non-exempt, hourly employee's regular rate of pay for all hours worked above forty (40) hours per week. (29 U.S.C. § 207).

73.    The FLSA is applicable since SEIU UHW as a voluntary association has an annual dollar volume of receipts in the amount of $500,000 or more, and/or  because Plaintiff performed work involving interstate commerce.

74.    SEIU UHW misclassified Plaintiff as a salaried, exempt employee since Plaintiff's work as an Organizer Representative does not meet the legal test for exempt status as set forth at 29 U.S.C. § 213 and in the associated United States Department of Labor ('DOL') regulations for multiple reasons, including but not limited to the fact that Plaintiff's primary duty: a) *was not* the performance of office or non-manual work directly related to the management or general business operations of SEIU UHW; and b) *did not include* the exercise of discretion and independent judgment with respect to matters of significance.

75.    Instead Plaintiff spent the majority of her time in the office on the phone, either returning calls based on messages left by union members, or calling union members: a) to get union members to volunteer to come into the office and work on 'phone banks'; b) about various union issues; or c) as part of an assigned 'campaign'. All of this office work was highly regulated and micro-managed by the SEIU UHW managers and supervisors, including Rebecca Malberg, the Home Care Division Director, Ben Tracey, the Home Care Division Field Director, and her direct supervisors acting as Home Care Division Coordinators, including Mylka Rodriguez, and Benigno Delgado. For example, when a given 'campaign' would be directed by managers/ supervisors, Plaintiff would be given the campaign 'data' by SEIU supervisors, which typically amounted to a list of over three thousand union members.  Plaintiff  was then required to go mechanically through the list from start to end, making phone calls, and when reaching a union member, using a 'script' prepared by her supervisors to attempt to get the union members to attend union events. Such phone bank work associated with campaigns typically occurred three to four times per year, and typically involved 11 to 12 hour work days.

/ / /

76.    Even the work performed in the field by Plaintiff was micro-managed by her supervisors. The field work most often consisted of fund-raising work, which in turn was comprised of going 'door-to-door' to union members homes to solicit funds. The manner in which this work was done, including what Plaintiff was allowed to say, was prescribed by and regulated by SEIU UHW via internal policies and via directives from supervisors.

77.    Regardless of the location of Plaintiff's work, she had to follow detailed directions from her supervisors, comply with SEIU protocols, and follow specific scripts as to what she was allowed to say to existing union members.

78.    To document both her office work and her field work, Plaintiff was required as an Organizer Representative to file 'Activity Reports' on a weekly basis, using prescribed SEIU forms, and filling out the forms according to the set policies mandated by SEIU.

79.    Plaintiff's work as an Organizer Representative *did not include* handling grievances for union members, and Plaintiff did *not have the authority* to bring or settle grievances. Plaintiff also did not perform any work negotiating collective bargaining agreements.

80.    Plaintiff routinely worked more than forty hours per week, given the 'campaigns' assigned, which all had deadlines to recruit as many union members as possible to participate in the campaigns.

81.    Despite routinely working over forty hours per week, SEIU UHW did not provide any overtime pay to Plaintiff, and therefore violated the overtime pay provisions of the FLSA.

82.    SEIU-UHW owes Plaintiff overtime pay for the full time and a half on her regular rate of pay for all hours worked by Plaintiff over forty hour per week since three years prior to this action being filed. *See Skyline Homes, Inc. v. Department of Industrial Relations* (1985) 165 Cal. App. 3d 239 (misclassified exempt employees are owed full time and a half overtime pay for all hours worked above eight hours per day

and/or forty hours per week since the annual salary for the mis-classified exempt employee must be based on 2,080 hours per year).

83.   In addition, SEIU-UHW owes an equal amount of liquidated damages to Plaintiff pursuant to 29 U.S.C. § 216.

84.   At all times pertinent to this action, Defendant has intentionally chosen not comply with the FLSA to provide any overtime compensation to Plaintiff for FLSA overtime hours; accordingly a three year statute of limitations and recovery period applies to this action for the overtime pay sought, pursuant to 29 U.S.C. §255.

85.   At all times pertinent to this action, Defendant knowingly chose not to comply with the FLSA overtime pay requirement.  Accordingly, SEIU-UHW cannot show any good faith belief that  overtime compensation should not have been provided, and therefore SEIU-UHW owes liquidated damages pursuant to 29 U.S.C. §216 and U.S.C. §260 in an amount equal to all the overtime compensation owed to Plaintiff.

**X.     FIFTH CAUSE OF ACTION**
**WAGE-RELATED DISCRIMINATION**
**(Violation of the FLSA, 29 U.S.C. § 201 et seq., including § 215(a)(3))**

86.   Plaintiff incorporates by reference and re-alleges paragraphs **X** through **XX** as though fully set forth herein.

87.   The provision of the FLSA which prohibits retaliation against employees who raise wage-related concerns states that it shall be unlawful to discharge or in any other manner discriminate against any employee because such employee has filed a complaint

88.   The 'complaint' necessary to trigger the protections of 29 U.S.C. § 215(a)(3) does not have to be a written complaint; rather, verbal complaints are sufficient. *See Kasten v. Saint Gobain Performance Plastics Corporation*, (2011) 131 S.Ct. 1325.

/ / /

/ / /

-22-
Complaint for Damages

89.    Further, internal complaints to supervisors, as opposed to complaints to governmental agencies, are also sufficient to trigger the protections under 29 U.S.C. § 215 (a)(3). S*ee Lambert v. Ackerley* (9th Cir. 1999) 180 F.3d 997, 1004.

90.    Plaintiff raised wage-related concerns with SEIU UHW in at least three different ways: first by making multiple requests for reimbursement for work-related expenses; second by making multiple requests to cash out accrued vacation pay; and third by asserting to SEIU UHW, though her legal counsel, that she was misclassified as a salaried, exempt employee and should be considered a non-exempt, hourly employee.

91.    Plaintiff sufficiently activated the protections against retaliation set forth in the FLSA at 29 U.S.C. § 215 (a)(3) by making multiple inquiries in regards to not receiving expense reimbursements in a timely manner in accordance with SEIU UHW's policies and practices.  On December 27, 2013, Plaintiff inquired about her expense reimbursements in regards to not being paid in a timely manner.  In direct response to Plaintiff's inquiry, she was yelled at by management (Edgard Cajina), and on December 30, 2013 was called a racial slur by Mr. Edgard's daughter.

92.    On January 16, 2014 Plaintiff was forced to attend an investigatory (disciplinary), meeting, was falsely accused of assaulting the employee responsible for processing her expense report (Admin Assistant J. Castro) and was threatened with termination  by SEIU HR Director Mary Sacramento if  she gave any false information during the meeting. Plaintiff was later exonerated of all charges, but HR Director Mary Sacramento never threatened to terminate J. Castro if she gave false information during the meeting, nor was Ms. Castro ever disciplined for intentionally filing a false report and giving false information to management.

93.    On Friday March 27, 2015 Plaintiff complained to SEIU UHW management (Shirlena & Rosa) about being paid with a check that was issued for a significantly different amount than what was actually written on the check.  In direct response to this complaint, SEIU management insisted the bank made an error, refused to reissue Plaintiff or the bank another check, yelled at Plaintiff  (by Edgar Cajina), and

refused to provide an explanation.  Then on Monday March 30, 2015 SEIU UHW disabled Plaintiff's work cell phone and laptop, and on Wednesday April 1st disabled Plaintiff's Self-Check account ID, blocking her from viewing her most recent vacation and sick time accruals. Plaintiff requested to cash out some vacation time, and SEIU HR provided a false report of her vacation accruals and then denied her vacation cash-out request based on their false report. Finally on Thursday April 2nd management (Mylka Rodriguez) intentionally released a false report listing Plaintiff's productivity for the week at zero to the entire home care division staff- including the Chief of Staff (G. Pullman).

94.    On May 12, 2015 Plaintiff sent request to SEIU UHW HR to be paid holiday time per the collective bargaining agreement. SEIU UHW denied the request, and then retaliated against Plaintiff by falsely accusing her later on the same day (by Sophi Hak and Greg Pullman) of not providing a doctor's note for a previous sick day (when the doctor's note *was submitted* on 4/29/15 to management).  SEIU UHW then further retaliated against Plaintiff by forcing her to attend a disciplinary meeting with Mylka Rodriguez, and issuing her a written warning on May 29th. During this meeting management admitted to putting false information in the write up in order to make the disciplinary action feasible.

95.    Plaintiff also sufficiently activated the protections against retaliation set forth in the FLSA at 29 U.S.C. § 215 (a)(3) by having her attorney, Gary G. Goyette, issue an initial notice to SEIU UHW in a letter dated May 29, 2014 to the SEIU UHW Human Resources (HR) Director, Mary Sacramento, stating that Plaintiff contended she was misclassified as a salaried, exempt employee, and should have been classified as a non-exempt, hourly employee and provided overtime pay as applicable.  Plaintiff then further raised this misclassification wage concern with SEIU UHW by having the same legal counsel issue a detailed demand letter on January 15, 2015 to Bruce Harland, legal counsel for SEIU UHW at that time, setting forth the specific facts and law as to why Plaintiff should have been classified and paid as a non-exempt, hourly employee.

96.    Plaintiff was subjected to both specific and general discrimination in the course of, and following her raising of the wage-related concerns (the timeliness of work-related expenses being reimbursed, casing out vacation pay after three years of accrual, and receiving overtime pay as a non-exempt hourly employee), including but not limited to reimbursements not being provided in a timely manner or per policy, and being kept classified as salaried, exempt, and required to work excessive hours (fifty hours per week and more) without any overtime pay.   In addition to this treatment, Plaintiff was subjected to all the other discrimination and harassment as pled above, and ultimately was terminated by SEIU on August 27, 2015, as pled above.

97.    Plaintiff was subjected to the prohibited, retaliatory discrimination and termination by SEIU UHW as a direct result of Plaintiff raising the wage-related concerns described above, as supported by the fact that no other SEIU UHW Organizer Representative had to ensure such discrimination, leading to termination.

98.    As a result of the prohibited, retaliatory discrimination and termination by SEIU UHW, Plaintiff has lost the wages she would have earned and the benefits she would have been provided since being terminated on August 27, 2015 and continues to lose such wages and benefits going forward. Such lost wages and benefits are therefore sought as set forth in the Prayer for Relief below.

99.    As a result of the prohibited, discrimination and termination by SEIU UHW, Plaintiff has suffered, and continues to suffer, extreme emotional pain and suffering, and associated adverse physical conditions, as pled herein. The appropriate monetary damages for such pain and suffering, recoverable under 29 U.S.C. § 215(a)(3) per *Lambert v. Ackerley* (9th Cir. 1999) 180 F.3d 997, is therefore sought as set forth in the Prayer for Relief below.

/ / /

/ / /

/ / /

/ / /

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order in favor of Plaintiff and against Defendant SEIU UHW awarding Plaintiff relief as follows:

1) Reinstatement for Plaintiff to her union Organizer Representative position with SEIU UHW, and purging of her personnel file (so the file appears as if no termination ever occurred);

2) Payment by SEIU UHW of all salary lost by Plaintiff, plus interest since being improperly terminated by SEIU UHW;

3) Payment by SEIU UHW of lost future pay for Plaintiff (if an order for reinstatement of Plaintiff is not made by the Court) as determined appropriate by the Court;

4) Payment by SEIU UHW of all overtime pay (based on 29 U.S.C. § 207) and an equal amount in liquidated damages (based on 29 U.S.C. § 216) to Plaintiff for all FLSA overtime hours worked in the past three years by Plaintiff;

5) Pain and suffering damages for Plaintiff in am amount appropriate for the significant emotional pain and suffering incurred and still being incurred on an ongoing basis by Plaintiff for being terminated in violation of the FMLA and 29 U.S.C. § 215(a)(3) by the SEIU-UHW;

6) Reasonable Attorneys fees and costs (pursuant to 29 U.S.C. § 216 and as allowed under the FMLA and Plaintiff's litigation costs;

7) Interest at ten percent (10.0 %) per annum on all lost pay, overtime pay, and other monetary damages due to Plaintiff;

8) Any other relief deemed proper by the Court.

/ / /

/ / /

/ / /

/ / /

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of her claims by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure and to the extent authorized by law.

Dated:  March 31, 2016                         GOYETTE & ASSOCIATES, INC.

A Professional Law Corporation


By:     /s/ Gary G. Goyette
        Gary G. Goyette
        Attorney for Plaintiff

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency _____ GOVERNOR EDMUND G. BROWN JR._

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

April 01, 2015

GARY GOYETTE
2366 Gold Meadow Way, Suite 200
Gold River CA California 85670

RE:  **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 520749-150787
Right to Sue: Joseph / Mary Kay Henry Service Employees International Union (SEIU) United
Healthcare Workers (UHW)

Dear Complainant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing
Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve
these documents on the employer.  You or your attorney must serve the complaint.  If you do not
have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of
Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of
California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets
procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                                    DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

April 01, 2015

RE:  **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 520749-150787
Right to Sue: Joseph / Mary Kay Henry Service Employees International Union (SEIU) United
Healthcare Workers (UHW)

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of
Fair Employment and Housing (DFEH) in accordance with Government Code section 12960.
This constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. This case is not being investigated
by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to
Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758                    DIRECTOR KEVIN KISH
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 01, 2015

Shareefah Joseph
C/o Goyette And Associates
Gold River California 95670

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 520749-150787
Right to Sue: Joseph / Mary Kay Henry Service Employees International Union (SEIU) United
Healthcare Workers (UHW)

Dear Shareefah Joseph,

This letter informs you that the above-referenced complaint was filed with the Department of Fair
Employment and Housing (DFEH) has been closed effective April 01, 2015 because an immediate Right
to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision
(b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against
the person, employer, labor organization or employment agency named in the above-referenced
complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity
Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure
or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GOVERNOR EDMUND G. BROWN JR.

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758                                    DIRECTOR KEVIN KISH
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

Enclosures

cc:

1    COMPLAINT OF EMPLOYMENT DISCRIMINATION

2    BEFORE THE STATE OF CALIFORNIA

3    DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

4    Under the California Fair Employment and Housing Act
     (Gov. Code, § 12900 et seq.)

5

6    In the Matter of the Complaint of                    DFEH No. 520749-150787

7    Shareefah Joseph, Complainant.
     C/o Goyette And Associates

8    Gold River California 95670

9    vs.

10

11   Mary Kay Henry  Service Employees International
     Union (SEIU) United Healthcare Workers (UHW)

12   Respondent.
     569 Thomas L. Berkley Way

13   Oakland,  California 94612

14

15   Complainant alleges:

16   1. Respondent **Service Employees International Union (SEIU) United Healthcare Workers (UHW)** is a

17   **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code,
     § 12900 et seq.).  Complainant believes respondent is subject to the FEHA.

18   2. On or around **March 30, 2015**, complainant alleges that respondent took the following adverse actions

19   against  complainant:  **Discrimination,  Harassment,  Retaliation  Asked  impermissible  non-job-related
     questions, Denied a good faith interactive process, Denied a work environment free of discrimination**

20   **and/or retaliation, Denied or forced to transfer,** .  Complainant believes respondent committed these actions
     because of their: **Color, Race** .

21   3. Complainant **Shareefah Joseph** resides in the City of **Gold River**, State of **California**.   If complaint

22   includes co-respondents please see below.

DFEH 902-1

-5-

*Complaint – DFEH No. 520749-150787*

Date Filed: April 01, 2015

**Additional Complaint Details:**

Beginning in late 2011 and continuing to the present day, the Complainant, Shareefah Joseph, has been subjected to discrimination, harassment, and retaliation based on her race as an African American by her employer, the Service Employees International Union (SEIU) United Healthcare Workers (UHW) and the agents/supervisors of her employer. Specifically, she has been singled out by Dave Regan, the SEIU UHW President and by various SEIU UHW managers, including Ben Tracey, Mykla Rodriguez, Rebecca Malberg, Benigno Delgado, Marie Gil and Jennifer Castro, and treated adversely due to her African American race (she was the only Afican American SEIU UHW employee in the Santa Rose office where she worked for years) in a variety of ways, including: 1) being subjected to comments about her hair (a weave, which is a version of hair extensions worn almost exclusively by African Americans) such as did you buy your hair at the store, in meetings in front of multiple manages and co-workers, 2) being investigated for alleged wrongdoing, which included being ordered to meetings with supervisors on little or no notice where she was interrogated aggressively, and ultimately being exonerated, while her co-workers were never subjected to such processes - - and this occurred over and over without any explanation from SEIU UHW, 3) being ridiculed by supervisors in front of co-workers for wearing clothing with Ralph Lauren logo patches since, as described by her supervisor, that didnt make sense because she was black and could not belong to polo clubs., 4) being transferred without notice to a different territory for no valid reason, 5) being accused of missing meetings when she was participating, with the knowledge of her employers, in assigned campaigns, and 6) even being physically assaulted by a co-worker, which SEIU UHW refused to investigate despite her complaints regarding this incident. .

*Complaint – DFEH No. 520749-150787*

DFEH 902-1

Date Filed: April 01, 2015

VERIFICATION

I, **Gary Goyette**, am the Attorney for Complainant in the above-entitled complaint.   I have read the foregoing complaint and know the contents thereof.   The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On April 01, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Gold River California**
**Gary Goyette**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

DFEH 902-1

-7-
*Complaint – DFEH No. 520749-150787*

Date Filed: April 01, 2015