UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAREEFAH JOSEPH,<br><br>   Plaintiff,<br><br>   v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WEST (SEIU UHW),<br><br>   Defendant. | Case No. 16-cv-01644-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 13 |

## I.  INTRODUCTION

Plaintiff Shareefah Joseph filed the instant suit against Defendant Service Employees International Union, United Healthcare West (SEIU), alleging that she was misclassified as a salaried, exempt employee, that she was subjected to wage-related retaliation, that she was discriminated and harassed because of her race, and that she was terminated while she was on medical leave. Docket No. 1 (Compl.) at ¶ 1. SEIU now moves to dismiss the complaint in its entirety. Docket No. 13 Mot.).

SEIU's motion came on for hearing before the Court on July 21, 2016. For the reasons stated on the record, and as supplemented below, the Court **GRANTS IN PART** and **DENIES IN PART** SEIU's motion to dismiss.

## II.  BACKGROUND

Joseph was employed by SEIU as an "Organizer Representative" between August 1, 2008 through her termination on August 27, 2015. Compl. at ¶¶ 2, 15. Joseph was assigned to SEIU's Home Care Division, and worked out of SEIU's Santa Rosa office, where she was the only African-American employee. *Id.* at ¶¶ 2, 12, 42. Joseph alleges that as an Organizer

Representative, she was required to work a minimum of fifty hours per week, and worked fifty-five to sixty hours per week for roughly half of each calendar year. *Id.* at ¶ 13. The majority of her time was spent in the office on the phone, either returning calls or calling union members to get union members to volunteer, to discuss union issues, or as part of an assigned campaign. *Id.* at ¶ 75. Joseph alleges that both her office work and field work were highly regulated by SEIU managers and supervisors. *Id.* at ¶¶ 75, 76.

Joseph alleges that racial discrimination and harassment began in late 2011. *Id.* at ¶ 37. While she was at the main SEIU office in Oakland, SEIU President Dave Regan twice asked Joseph (whose hairstyle that day was a weave): "Did you buy your hair from the store on the corner?" *Id.* The following week, Joseph was at the Oakland office when Home Care Coordinator Lily Hickman asked her, "Is that your real hair?" *Id.* at ¶ 38. Joseph claims that following these events, adverse acts against her began to occur. For example, in February 2012, SEIU removed Joseph from the Seton campaign, without explanation. *Id.* at ¶ 39. Joseph then returned to her designated work area in Sonoma, but was told that she could no longer work there because she did not speak Spanish, even though she was the top producer in her Division the previous two years. *Id.* She was assigned to work areas 45-60 minutes away from the Sonoma office while her normal area was divided among two Spanish-speaking representatives. *Id.* Although serious complaints were brought against the two representatives, neither was disciplined. *Id.* at ¶ 40.

Joseph also alleges that she was subjected to numerous investigatory meetings and disciplinary actions, without any basis. In April 2012, SEIU required Joseph to attend an investigatory meeting regarding the Seton campaign, based on an accusation of being "disruptive," and for giving a member a small child's toy. *Id.* at ¶ 43. Although Joseph was exonerated of the charges, the exoneration was never put in writing, affecting her HR profile. *Id.* In August 2012, Joseph was ordered to a meeting based on Ms. Gil's allegation that Joseph had knowledge of an incident at a meeting in San Luis Obispo, even though she had been instructed not to attend this meeting. *Id.* at ¶ 44. Joseph was placed on administrative leave until September 5, 2012. *Id.* In October 2012, Joseph was required to meet Ms. Gil and her District supervisor, Benigno Delgado. *Id.* at ¶ 45. During the meeting, Ms. Gil stated that she "has an issue" with Joseph and that she did

not feel comfortable around her, but made no specific allegations. Later that month, Joseph was required to attend a meeting with Mr. Delgado and SEIU manager Ben Tracey based on the allegation that she was not working well with the team. *Id.* at ¶ 46. At the meeting, Mr. Tracey instructed Joseph not to talk about her accomplishments, but to instead "tell a sad story about her life" so that people would like her. Joseph contends that this was contrary to the expectations for non-African-American employees, who were very assertive in their work and were never reprimanded, instead earning promotions. *Id.* Joseph was later reprimanded by a supervisor for being "missing in action" even though she had told the campaign lead that she would be out because she was being required to testify at a trial regarding the Seton campaign. *Id.* at ¶ 47. In January 2014, Joseph was required to attend another investigatory meeting and was accused by Ms. Jennifer Castro of physically and verbally assaulting her on December 30, 2013. *Id.* at ¶ 49. Although Joseph was exonerated, Ms. Castro was never disciplined for the accusations. *Id.* In April 2014, Joseph was required to attend yet another investigatory meeting based on Ms. Rebecca Malberg accusing Joseph of refusing to provide factual information to SEIU management. *Id.* at ¶ 52. Joseph was accompanied by her union representative, Jared Mayhugh. After Joseph was exonerated, Mr. Mayhugh asked Ms. Malberg why she was targeting Joseph; Ms. Malberg did not answer. *Id.* The next week, Joseph was required to attend another investigatory meeting for failure to follow protocol for submitting a doctor's note to take a day off. *Id.* at ¶ 53. During this meeting, Mr. Tracey allegedly used offensive racial epithets criticizing the Ralph Lauren sweater Joseph was wearing, and insinuated that Joseph could not belong to a polo club or ride horses because she is African-American, and not a white male. *Id.* at ¶ 54.

In addition to the investigatory meetings, Joseph alleges that on December 27, 2013, when she inquired about the reimbursement of her expenses, Director of Finance Edgar Cajina yelled at her. *Id.* at ¶ 48. A few days later, Mr. Cajina's daughter (also a SEIU employee) directed a racial slur at Joseph. *Id.*

In May 2014, Ms. Castro was assigned as Joseph's administrative assistant, despite having accused Joseph of physically assaulting her in December 2013. *Id.* at ¶ 55. Joseph's concerns about a hostile work environment given Ms. Castro's accusations and Ms. Gil's professed

3

discomfort with her were not addressed. *Id.* at ¶ 56. According to Joseph, throughout 2014, Ms. Castro falsely accused Joseph of being absent from work, not adhering to deadlines for submitting paperwork, and entering a supply room she was not authorized to enter. *Id.* at ¶¶ 57-58. In October 2014, Ms. Castro struck Joseph in the head with her hand; Joseph reported the incident several times, and was berated for not reporting it sooner although she had informed other management. *Id.* at ¶ 59. Human Resources found that Ms. Castro did not intend to cause harm, and refused to address the matter further. *Id.*

Joseph contends that the racial discrimination continued through 2015, including a March 5 incident where Joseph requested that Mr. Tracey not use racial undertones in his speech. *Id.* at ¶ 60. Joseph was subsequently threatened with discipline for the incident. A number of other incidents followed, including Joseph being denied a request to cash out her vacation pay, being blocked from viewing her vacation/sick time accruals, false reports that Joseph's productivity was zero, accusations that she failed to send a doctor's note, requiring a meeting that Joseph was informed was not a disciplinary action before being issued a disciplinary action in her personnel file, and being accused of not reporting her productivity. Joseph also filed at least two complaints, which were ignored. *Id.*

Sometime in 2015, Joseph took unpaid leave under the FMLA after notifying SEIU, and as supported by her doctor, that she needed to be out on FMLA leave through October 1, 2015. *Id.* at ¶ 21. Although Joseph had sufficient leave through October 1, 2015 or, "at an absolute minimum," September 21, 2015, SEIU terminated Joseph on August 27, 2015, claiming that her leave was exhausted on August 20, 2015 and that with vacation days counted, Joseph was required to return to work after August 26, 2015. *Id.* at ¶ 22. Joseph filed a grievance appealing the termination, which SEIU denied. *Id.* at ¶ 26.

### III.  DISCUSSION

A. <u>Standard of Review</u>

Defendants move for a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief. A motion to dismiss based on this rule essentially challenges the legal sufficiency of the claims alleged. *See*

4

*Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim of relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 556. However, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

B.  <u>Family Medical Leave Act (FMLA)</u>

The Family Medical Leave Act (FMLA) "provides job security and leave entitlements for employees who need to take absences from work for personal medical reasons, to care for their newborn babies, or to care for family members with serious illnesses." *Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003). To that end, the FMLA creates two interrelated substantive employee rights: first, the employee is entitled to take unpaid leave for up to twelve weeks each year (provided that they have worked for the covered employer for twelve months), and second, an employee who uses her FMLA leave "has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave." *Id.*; *see also Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011).

The Court finds that for purposes of pleading, Joseph has adequately pled her FMLA claim as she alleges that her leave was supported by a doctor's note. However, to the extent that Plaintiff seeks damages for pain and suffering under the FMLA, such damages are stricken as "[i]t is well-settled that the FMLA, by its terms, only provides for compensatory damages and not punitive damages." *Farrell v. Tri-Cnty. Metro. Transp. Dist. of Ore.*, 530 F.3d 1023, 1025 (9th Cir. 2008) (internal quotation omitted); *see also* 29 U.S.C. § 2617(a)(1)(A) (listing recoverable

1  damages as the amount of (1) any wages, salary, employment benefits, or other compensation
2  (collectively, wages) denied or lost; (2) interest on the wages; and (3) liquidated damages equal to
3  the sum of the wages and interest due).[1]

C. Fair Employment and Housing Act (FEHA)

1. Statute of Limitations

SEIU argues that the majority of allegations of discrimination are time-barred because Joseph did not file her administrative complaint until April 1, 2015. Mot. at 8. However, at this pleading stage, Joseph has provided adequate facts for application of the continuing violations doctrine.[2] Under the continuing violation doctrine, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005). The continuing violation doctrine applies when an employer's unlawful acts are: (1) sufficiently similar in kind; (2) have occurred with reasonable frequency; and (3) have not acquired a degree of permanence. *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001). Thus, a continuing violation may exist where there is a company-wide policy or practice of discrimination, or a series of related acts against a single individual. *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52, 64 (2001). Here, Joseph has alleged a pattern of discrimination and harassment beginning in late 2011, including being called into meetings or otherwise investigated and punished for wrongful actions, only to be exonerated while individuals who accused her were not disciplined. *See* Compl. at ¶¶ 43 (April 2012 investigatory meeting after being accused of being disruptive and giving a child's toy to someone); 44 (August 2012 investigatory meeting for having knowledge of an incident at a meeting that she did not attend,

---

[1] As to SEIU's contention that Joseph cannot recover lost wages because she has pled alternative dates for when her leave should have lasted until, the Court reserves judgment on this argument. Under either alternative, however, SEIU's termination of Joseph on August 27, 2015 would have been improper.

[2] At least one court has also found that a determination of whether actions "were part of a continuous system or policy requires the kind of factual inquiry inappropriate for resolution on a motion to dismiss." *Tillery v. Lollis*, No. 1:14-cv-2025-KJM-BAM, 2015 U.S. Dist. LEXIS 106845, at *37 (E.D. Cal. Aug. 13, 2015)

1  and then being put on administrative leave for the incident until September 2012); 47 (October
2  2012 incident where she was accused of being missing in action because she was testifying at a
3  trial on a campaign); 49 (January 2014 investigatory meeting where she was accused of physically
4  and verbally assaulting Ms. Castro); 51 (March 2014 incident where she was accused of refusing
5  to ride with a UHW member); 52 (April 2014 investigatory meeting based on false accusation that
6  she refused to provide factual information to management); 53 (separate April 2014 investigatory
7  meeting for failing to follow protocol for taking one day off).  These events are reasonably
8  frequent, and when considering Joseph's allegations as a whole, they are sufficient to find that the
9  continuing violations doctrine could apply in this case, particularly at the pleading stage.[3]

### 2. Discrimination

The Court will dismiss Joseph's disparate treatment claim because she has failed to allege an adverse action that is connected with the alleged discrimination.  To establish a prima facie case for race-based discrimination under FEHA, a plaintiff must generally show: (1) she is a member of a protected class, (2) she was qualified for the position she held, (3) she suffered an adverse an adverse employment action, and (4) some other circumstances which suggest discriminatory motive.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000).   In turn, an "adverse action" is a "change[] in terms and conditions of employment [which] must be both substantial and detrimental to be actionable."  *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 373 (2005); *see also Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 713 (2008) (examples of adverse action include "termination, demotion, or denial of an available job").  Here, the only adverse action alleged by Joseph is her termination, which she does not allege resulted from racial discrimination.  The other events complained of by Joseph, such as the disciplinary meetings and false reports of misconduct, do not rise to the level of an adverse action, but are more appropriately considered with her harassment claim.  While several courts have

---

[3] The Court finds that even if certain events are time-barred, this would not preclude admission of evidence regarding events outside of the statute of limitations that are probative of her substantive claims. *Ortega v. Regents of the Univ. of Cal.*, Case No. 11-4031 PSG, 2012 U.S. Dist. LEXIS 169938, at *13-14 (N.D. Cal. Nov. 29, 2012) ("the statute of limitations does not 'bar an employee from using the prior acts as background evidence in support of a timely claim'") (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002)).

7

broadly interpreted the adverse employment action requirement and found it satisfied by "disadvantageous transfers, delays in reinstatement, refusal to transfer, refusal to promote, unfavorable job evaluations, and other similar actions," *Davis v. Cal. Dep't of Corr.*, Civ. S-93-1307 DFL GGH, 1996 U.S. Dist. LEXIS 21305, at *15 (E.D. Cal. Feb. 23, 1996), here the disciplinary meetings and false reports of misconduct did not result in a material change to her employment, such as formal disciplinary action, reduction in pay, or unpaid suspension. *Cf. Ramadan v. City of Napa*, No. C 06-1804 MHP, 2007 U.S. Dist. LEXIS 41465, at *14-15 (N.D. Cal. June 6, 2007) (finding that counseling memorandum and written reprimand did not constitute an adverse action, but that a one-day suspension without pay did because depriving an employee of pay materially affects the terms and conditions of employment).

### 3. Harassment and Failure to Prevent Discrimination

The Court finds that Joseph's harassment claim is adequately pled. In contrast to discrimination, which concerns "bias in the exercise of official actions on behalf of the employer, . . . harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009). Generally, courts have looked to the elements of a Title VII hostile work environment claim for the analogous FEHA claim; thus, to establish a prima facie case of harassment, Joseph must sufficiently allege that: (1) she was subjected to verbal or physical conduct because of her race; (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment, and create an abusive work environment. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008); *see also Lelaind,* 576 F. Supp. 2d at 1101 ("Title VII hostile work environment standards are equally applicable to FEHA . . . ."). At the motion to dismiss stage, Joseph "need not support h[er] allegations with evidence, but h[er] complaint must allege sufficient facts to state the elements of a hostile work environment claim." *Johnson*, 534 F.3d at 1122.

While the complaint and facts alleged by Joseph require inferences drawn by the Court, Plaintiff has pled sufficient facts to state a harassment claim, because first, Joseph has alleged a number of assertedly overtly racial actions, including being called a racial slur. *See* FAC at ¶¶ 37,

8

38, 48, 54. While most of the other events are not expressly race-based, an inference of racial bias can be made given Joseph's position as the only African-American employee in that office, who was singled out and subjected to numerous investigatory meetings concerning accusations that were unsubstantiated, while her complaints (including of a physical assault) went uninvestigated, being treated differently than others who were not African American. The Court denies SEIU's motion to dismiss Joseph's harassment claim. Because the Court finds that are adequate facts supporting the harassment claim, the Court will also deny SEIU's motion to dismiss Joseph's failure to prevent discrimination claim as SEIU's only argument against this claim was that Joseph's allegations were inadequate to support a claim of harassment. *See* Mot. at 13-14; Docket No. 16 (Reply) at 6. Here, there were at least allegations that Joseph had complained to management and HR of the meetings and false accusations, as well as her concerns about Castro and Gil, including the alleged physical assault by Castro, only to have HR do nothing to investigate or ignore her complaints. SEIU did not challenge these allegations as insufficient, but focused their argument solely on the failure to allege harassment.

D.  Fair Labor Standards Act (FLSA)

1.  Exempt Status

The parties dispute whether Joseph was an exempt employee. An employee is exempt from the requirements of the FLSA when: (1) the employee is compensated on a salary or fee basis at a rate of not less than $455 per week; (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

The parties' primary dispute is whether Joseph's work required the exercise of discretion and independent judgment. SEIU relies primarily on the generic job description for a union organizer, and the decisions of several courts which have found that a union organizer's position requires the use of discretion and independent judgment. *See Rincon v. Am. Fed'n of State, Cnty., & Mun. Emps.*, No. C 12-4158 MEJ, 2013 WL 4389460; *Savage v. UNITE HERE*, No. 05 Civ.

9

10812(LTS)(DCF), 2008 WL 1790402 (S.D.N.Y. Apr. 17, 2008). However, the question is what Joseph actually did, not what her job description stated. *See* 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part"); *Kelley v. SBC, Inc.*, No. 97-cv-2729 CW, 1998 WL 928302, at *8 (N.D. Cal. Nov. 13, 1998) (classification "must be based on the actual nature of the duties performed by the employee, not by the employee's title or job description"). When looking at the complaint, Joseph has alleged that she did not exercise discretion and independent judgment. Instead, she states that she spent the majority of her time on the phone, returning calls based on messages or calling union members to get them to volunteer on phone banks, informing them about union issues, or as part of an assigned campaign, relying on scripts. Compl. at ¶ 75. There is no indication from this allegation that Joseph had any discretion or exercised her judgment to go beyond the script. Joseph also alleges that when performing field work, what she was allowed to say was prescribed and regulated by SEIU. *Id.* at ¶ 76. Again, there is no indication that she exercised any judgment in this work. Based on these allegations, Joseph's primary duties are not clearly exempt from the FLSA.

### 2. Statute of Limitations

SEIU challenges the three-year statute of limitations asserted by Joseph. The FLSA's statute of limitations is generally two years, but is extended to three years when the violation is "willful." 29 U.S.C. § 255(a). The Ninth Circuit has found that "[a]t the pleading stage, a plaintiff need not allege willfulness with specificity." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (allegation that the FLSA violations were "deliberate, intentional, and willful" "was sufficient to implicate the three-year statute of limitations in 29 U.S.C. § 255(a) for a cause of action arising out of a willful violation." *Id.* at 902-03 (internal quotations omitted). Joseph's allegation that SEIU "intentionally chose[] not [to] comply with the FLSA to provide any overtime compensation to Plaintiff for FLSA overtime hours," is sufficient to implicate the three-year statute of limitations at the pleading stage. *See* Compl. at ¶ 84.

### 3. FLSA Retaliation

The Court will dismiss Joseph's FLSA retaliation claim. The FLSA prohibits an employer

from discharging or otherwise discriminating against an employee for filing a complaint related to the FLSA. 29 U.S.C. § 215. To make a prima facie case for retaliation under the FLSA, the plaintiff must show that: (1) she engaged in activity protected by the FLSA; (2) she suffered an adverse action; and (3) a causal connection existed between the employee's activity and the adverse action. *Contreras v. Corinthian Vigor Ins. Brokerage*, 103 F. Supp. 2d 1180, 1184 (N.D. Cal. 2000). Here, Joseph has failed to alleged an adverse action or a causal link between FLSA complaint on May 29, 2014 and the employment action. Joseph's allegation that she had to work excessive hours without overtime pay after complaining of not being paid overtime is insufficient, as this reflects only a continuation of the complained of action, not an initiation of adverse treatment following a protected activity.[4] As for the August 2015 termination occurring more than a year after her FLSA complaint, Joseph's retaliation claim does not allege any causal link between the FLSA complaint and her termination. *Compare with United States ex rel. Campie v. Gilead Sci., Inc.*, No. C-11-941-EMC, 2015 U.S. Dist. LEXIS 1635, at *54-55 (N.D. Cal. Jan. 7, 2015) (dismissing retaliation claims "for the simple reason that there are insufficient allegations from which it can be inferred that any adverse employment action [the plaintiff] suffered was caused by his engaging in protected activity under the FCA or FLSA"). Courts have generally been wary of inferring causation solely based on temporal proximity when that proximity is not particularly convincing. *See, e.g.*, *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003) (finding no causal link where "the protected activity occurred thirteen months prior to the alleged adverse action" and the plaintiff failed to provide other "evidence of surrounding circumstances that show a retaliatory motive"). Joseph also does not allege other evidence of retaliation, such as allegations that SEIU "expressed opposition to h[er] speech" or that SEIU's explanation for the adverse employment action were pretextual. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003). Thus, the Court finds that the FLSA retaliation claim is not adequately pled.

---

[4] Similarly, if Joseph was to rely on the discriminatory actions as a consequence of her protected activity, there is no indication that the discriminatory actions were caused by her FLSA complaint, rather than being a continuation of discriminatory behavior that was occurring prior to the complaint.

11

## IV. CONCLUSION

The Court **GRANTS** SEIU's motion to dismiss as to Joseph's FEHA discrimination claim and FLSA retaliation claim, and will dismiss these claims without prejudice. The Court **DENIES** SEIU's motion to dismiss Joseph's FMLA claim, FEHA harassment claim, FEHA failure to prevent discrimination claim, and FLSA overtime claim. Joseph shall have **30 days** to file an amended complaint.

**IT IS SO ORDERED**.

Dated: August 1, 2016

_____
EDWARD M. CHEN
United States District Judge